In re: QUICK CASH, INC., A NEW MEXICO CORPORATION,

Debtor.

Case No. 15-11800-j7

YVETTE J. GONZALES, CHAPTER 7 TRUSTEE OF THE QUICK CASH, INC., BANKRUPTCY ESTATE, Successor in Interest to the Official Consumer Claimants Committee of Quick Cash, Inc.,

Plaintiff,

v.

Adversary Pro. No. 17-1051-j

TIMOTHY DELGADO, STACEY DELGADO, PAT MATAYA, MATAYA CONSTRUCTION CO., INC., GALLUP LUMBER & SUPPLY CO., RED MESA ELECTRIC ENTERPRISES LLC, ELKHORN CABINETS LLC, REHOBOTH CHRISTIAN SCHOOL, NATIONSTAR MORTGAGE LLC, ONEMAIN FINANCIAL, FKA CITIFINANCIAL, FIRST FINANCIAL CREDIT UNION, SYNCHRONY BANK, NEW YORK LIFE INSURANCE COMPANY, FIDELITY AND GUARANTEE LIFE INSURANCE COMPANY, AND NAEL AL-ASSI,

Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court after a final evidentiary hearing on Defendants, Timothy Delgado and Stacey Delgado's Motion to Dismiss under Rule 41(b) (the "Motion to Dismiss") and Trustee's Motion for Order Nunc Pro Tunc Extending Time to Serve Timothy Delgado and Stacey Delgado (the "Motion to Extend Time") (the "Final Hearing"). *See* Docket Nos. 66 and 71. Counsel appeared as noted on the record at the Final Hearing. *See* Docket No. 75. For the reasons explained below the Court will grant the Trustee's Motion to Extend Time.

## FACTS AND PROCEDURAL HISTORY[1]

The Court makes the following findings of fact pursuant to Fed. R. Civ. P. 52(a) made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

On July 6, 2015 Quick Cash, LLC ("Quick Cash") filed a voluntary petition for Chapter 11 bankruptcy relief. The Delgados are the sole officers, directors, and shareholders of Quick Cash. The Debtor commenced its bankruptcy case a little over a year after Caroline Tullie filed a Class Action Complaint for Damages against Quick Cash in the United States District Court for the District of New Mexico as Case No. 1:14-cv-00491-SMV-SCY (the "Class Action"). In the Class Action, Ms. Tullie asserted claims against the Debtor for violations of the federal Truth in Lending Act and the New Mexico Unfair Trade Practices Act. Ms. Tullie alleged that the putative class included at least 4,700 similarly situated persons. The Debtor removed the Class Action to this Court and this Court certified the class. Adversary Proceeding 15-1083 has been stayed.

Although the Class Action prompted the filing of the Quick Cash bankruptcy case, the total amount claimed in the case is over $6 million in addition to the claims included in the Class Action. There are over $4 million dollars of secured claims, $118,947.73 of priority claims including past due taxes, and unliquidated contingent unsecured claims arising from law suits alleging wrongful lending practices such as the conversion of social security cards from consumers and wrongful repossession of vehicles that are not included in the Class Action. There are also claims for unpaid attorneys' fees and costs and unsecured loans made to the Debtor. While this case was pending under Chapter 11, the Debtor reached a settlement and proposed a

---

[1] At the final hearing, the Court took judicial notice of the dockets in the Bankruptcy Case and the Adversary Proceeding including the documents on the dockets, excepting to the extent that the documents contained non-admissible hearsay. The facts and procedural history are derived in part from these sources.

plan to pay creditors, including the Class Action claimants, but the settlement was not consummated. At a status conference held on January 8, 2019, the Trustee informed the Court that unless further assets are collected, the Quick Cash Bankruptcy Estate will be administratively insolvent.

The Official Consumer Claimants Committee ("CCC") commenced Adversary Proceeding 17-1051 on June 26, 2017, by filing a complaint alleging fraudulent transfers and preferential transfers made by the Debtor's principals, Timothy and Stacey Delgado (together the "Delgados") while the Debtor was insolvent (the "Complaint"). The Delgados were the sole directors, officers and shareholders of the Debtor. The Complaint alleges that Quick Cash engaged in consumer funding and tax refund lending. The Complaint also alleges that the Delgados received numerous transfers totaling $1,273,027.09 from Quick Cash by causing it to pay their personal expenses, including for the remodeling of their personal residence. The Complaint names as defendants not only the Delgados but also recipients of the alleged fraudulent transfers paid by Quick Cash for the Delgados' personal benefit. The Plaintiff reported that she has settled most of the claims against defendants other than the Delgados.

On August 11, 2017 the bankruptcy case converted to a case under Chapter 7, and the Plaintiff was appointed as the Chapter 7 Trustee (the "Trustee"). The Trustee is an attorney who was first licensed to practice law in 1990 and has served as a Chapter 7 trustee in the District of New Mexico since 1993.

Five separate summonses were issued in this adversary proceeding, the first while the case was pending under Chapter 11, and the others after the case converted to Chapter 7. The Delgados were never served.

1. June 30, 2017: The Court issued a summons for service, which was not served on any party.

2. October 31, 2017: The Court issued an alias summons for service, which was not served on any party.

3. November 1, 2017: After the complaint was amended, the Court issued an alias summons for service, which was served on most of the defendants but not the Delgados or Elkhorn Cabinets.

4. November 14, 2017: The Court issued an alias summons for service, which was served on Elkhorn Cabinets.

5. November 30, 2017: The Court issued an alias summons for service, which was served on Rehoboth Christian School, and Fidelity and Guarantee Life Insurance Company.

The Court warned the Plaintiff that if service was not effectuated the Court would dismiss the adversary proceeding. On October 4, 2017, the Court issued a text only order stating, "It is hereby ordered that the Court fixes a deadline of 11/1/2017 for the Plaintiff to serve an alias summons with the complaint on defendants. If she fails to do [s]o by the deadline, the Court will dismiss the adversary proceeding." *See* Docket No. 7. Instead of complying with the deadline set by the Court, the Trustee filed an amended complaint on November 1, 2017 and failed to serve the amended complaint the Delgados. *See* Docket No. 9.

The Trustee was initially represented by Askew & Mazel, LLC, which had previously represented the Chapter 11 Consumer Creditor Committee. Around the time that the case converted to Chapter 7, Askew & Mazel merged with another law firm, which resulted in a conflict in its representing the Trustee with respect to the Delgados. At a scheduling conference

4

on January 4, 2018, the Court was informed of this conflict. No evidence was presented regarding why the Plaintiff did not serve the summons and complaint on the Delgados between June 30, 2017 and the conversion to Chapter 7 on August 17, 2017.

On February 27, 2018, some 200 days after the Chapter 11 case converted to Chapter 7, Giddens, Gatton & Jacobus P.C. entered its appearance on behalf of the Trustee to represent her on all claims. The Trustee indicated that process was not served on the Delgados during that 200-day period because she was having difficulty finding new counsel to represent her regarding her claims against the Delgados. The Trustee did not present evidence regarding the efforts she made to find new counsel during that 200-day period.

At a status conference held on November 13, 2018, over eight months after Giddens, Gatton & Jacobus, P.C. entered its appearance, the Court was informed that the Trustee had not effectuated service on the Delgados. The Trustee informed the Court that she intended to file a motion to extend time for service. Because the Trustee did not file a motion to extend time for service, on December 11, 2018 the Court entered a Notice of Hearing and scheduled a status conference for January 8, 2019. *See* Docket No. 64.

On December 14, 2018, the Delgados filed the Motion to Dismiss. At the status conference held January 8, 2019, the Court fixed a deadline of January 14, 2019 for the Trustee to file her motion to extend time to serve the complaint. The Trustee Filed the Motion to Extend Time on January 14, 2019, 567 days after the adversary proceeding was commenced, 521 days after the case converted to Chapter 7, and 321 days after Giddens, Gatton & Jacobus, P.C. entered its appearance on behalf of the Trustee.

At the Final Hearing on the Motion to Dismiss held April 2, 2019 one of the defendants, Timothy Delgado, testified as to the impact of the pending adversary proceeding on him. The

5

pending adversary proceeding has resulted in the Delgados waiting to see what happens and the wait has been detrimental to their reputation as they live in a small town and lost everything that they created. The Delgados have been working to keep their kids in school and maintain their marriage. In addition, they had to borrow money from their friends to pay a $20,000.00 retainer for their attorneys' fees, which has been almost completely depleted through the pendency of the bankruptcy case and adversary proceeding.

## DISCUSSION

The Delgados' Motion to Dismiss argues that under Fed. R. Bankr. P. 7041(b), which incorporates Fed. R. Civ. P. 41, the Court should dismiss the claims against them in this adversary proceeding for failure to effectuate service on the Delgados in compliance with Fed. R. Civ. P. 4(m). The Trustee counters that the Court should use its discretion to extend the time to serve the Delgados under Fed. R. Civ. P. 4(m).

Service of a summons and the complaint is governed by Fed. R. Civ. P. 4(m), which states

> (m) Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff-- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).[2] Federal courts in the Tenth Circuit apply a two-step inquiry to determine whether an extension of time to effectuate service is warranted when a plaintiff has not accomplished service of process within the 90 days mandated by Rule 4(m). *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). As the Tenth Circuit stated in *Espinoza*,

> The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. . . . If good cause is shown,

---

[2] The Trustee under Fed. R. Bankr. P. 7004(b) may effectuate service of process on the Delgados using First Class Mail.

the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.

52 F.3d 838, at 841. Service was not timely effectuated on the Delgados. The Delgados had not yet been served as of the date of the filing of the Trustee's Motion to Extend Time, 567 days after the adversary proceeding was commenced. As set forth below, the Trustee has not shown good cause for the failure to timely effect service. Nevertheless, the Court will exercise its discretion to permit a permissive extension of time for service.

  a. <u>The Trustee failed to demonstrate good cause for failure to timely serve the complaint.</u>

Good cause is not defined by Rule 4(m). Instead the Tenth Circuit has explained that

Without attempting a rigid or all-encompassing definition of good cause, it would appear to require *at least* as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement *and* some reasonable basis for noncompliance within the time specified is normally required.

*Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987) (internal quotations omitted), *see In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) ("inadvertence or negligence alone do not constitute good cause for failure of timely service"). Good cause occurs when there is "no fault—excusable or otherwise" because the movant did not control the situation for which the extension is sought. *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017).

In this case, the Trustee has been in control of the adversary proceeding since August 11, 2017, when the case converted to Chapter 7. The Trustee is a sophisticated bankruptcy practitioner who has served as a Chapter 7 Trustee for twenty-six years. The Trustee explained that the Delgados were not timely served because she was having difficulty finding counsel to represent her in the adversary proceeding. However, after the Trustee hired counsel on February 27, 2018, it took 321 days and the Delgados filing the Motion to Dismiss for counsel for the

7

Trustee to ask the Court to extend the time for service. Counsel for the Trustee explained that service of the Delgados slipped through the cracks and the failure to serve was inadvertent. This explanation does not constitute good cause for failure to timely serve the complaint. Therefore, the Trustee is not entitled to a mandatory extension of time to serve the complaint under Rule 4(m).

b. <u>The Court will grant a permissive extension of time for service.</u>

When considering whether it is appropriate to exercise its discretion to grant a permissive extension of time or dismiss a case without prejudice, the Court considers several factors (the "Espinoza Factors"):

> (1) whether the applicable statute of limitations would bar Plaintiff from refiling the action if it were dismissed; (2) whether Plaintiffs attempted to comply with Rule 4(m); (3) the number of defendants or other complexities of the case that may have made it difficult for Plaintiffs to effectuate service of process; (4) whether a permissive extension would prejudice Defendant; and (5) whether Defendant was evading service of process.

*Elevario v. Hernandez*, 2010 WL 11618911, at *3 (D.N.M. Dec. 20, 2010) (citing *Espinoza*, 52 F.3d 838, at 842). If the Court does not grant a permissive extension of time under Rule 4(m), the complaint is dismissed without prejudice. *Espinoza*, 52 F.3d 838, at 841.

However, when the applicable statute of limitations would bar the Plaintiff from refiling and effectively dismiss the complaint with prejudice, the Court must consider whether dismissal with prejudice is appropriate under Fed. R. Civ. P. 41(b).[3] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-921 (10th Cir. 1992); *see also* Fed. R. Civ. P. 4(m) advisory committee's note (1993) (explaining that a permissive extension of time to effect service "may be justified, for example, if the applicable statute of limitations would bar the refiled action."). As the Tenth Circuit

---

[3] Rule 41(b) states "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41 (b).

8

explained, "dismissal [with prejudice] represents an extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

In determining if dismissal with prejudice is appropriate based on the Trustee's delay in effectuating service, in accordance with Tenth Circuit precedent, the Court will consider and apply the following factors (the "Ehrenhaus Factors"):

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d 916, at 921 (internal quotations and citations omitted). The Ehrenhaus Factors are not a rigid test, but rather "criteria for the [bankruptcy] court to consider prior to imposing dismissal as a sanction." *Id.* at 921. The Court will also consider the nature of the underlying bankruptcy case as it pertains to the impact of dismissal on third-party creditors.

1. *The statute of limitations would bar the Trustee from refiling the complaint if it were dismissed.*

The parties agree that if the complaint against the Delgados is dismissed the statute of limitations governing the Trustee's claim would bar the refiling of the complaint. The Court also agrees. The statute of limitations pertaining to avoidance powers is set by 11 U.S.C. § 546, which states

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
>     (1) the later of--
>         (A) 2 years after the entry of the order for relief; or
>         (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>     (2) the time the case is closed or dismissed.

11 U.S.C. § 546. The order for relief was filed July 6, 2015. Under 11 U.S.C. § 546(a)(1)(A), the statute of limitations expired on July 6, 2017, before the case converted, and the Trustee was

9

appointed. As Collier on Bankruptcy explains, "If a trustee is not appointed or elected prior to the expiration of the initial two-year period, commencement of avoidance actions is time-barred, even if a trustee is subsequently appointed or elected in the case." 5 Collier on Bankruptcy ¶ 546.02[2], at 546-13 (Richard Levin & Henry J. Sommer eds., 2011).

Because the statute of limitations would bar the Trustee from refiling the Complaint, the Court will consider the Ehrenhaus Factors to determine if dismissal with prejudice is an appropriate sanction. For the reasons stated below, the Court will exercise its discretion to extend the time to effectuate service on the Delgados to prevent what would be tantamount to dismissal with prejudice.

2. *The degree to which the Delgados were actually prejudiced.*

The Delgados argue that they would be prejudiced by an extension of time to effectuate service because they should have the benefit of the statute of limitations. However, "the running of the statute of limitations [i]s a factor favoring the plaintiff and not as a basis for potential prejudice to the defendant" because "prejudice involves impairment of defendant's ability to defend on the merits, rather than foregoing such a procedural or technical advantage." *Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997) *see id.* at 758 (explaining that it is inconsistent with the purpose of Rule 4(m) to interpret the rule "under which the court may extend the time for service to *avoid* the bar of limitations, to authorize the court to *refuse* to extend it so the defendant may gain the *benefit* of that bar."); *see also Mata v. Anderson*, 760 F.Supp.2d 1068, 1100 (D.N.M. 2009).

Failure to effectuate service can result in prejudice due to delay, mounting attorneys' fees, and the stigmatizing effects of a pending action against the defendant. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). As the Supreme Court has explained, there is a

10

"real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost." *United States v. Marion*, 404 U.S. 307, 326 (1971). However, in determining if dismissal is an appropriate sanction the Tenth Circuit cautioned that "delay . . . by itself, would not be sufficient to warrant dismissal absent other justifying circumstances." *Ehrenhaus*, 965 F.2d at 921; *see Faircloth v. Hickenlooper*, 758 F. App'x 659, 662 (10th Cir. 2018) ("[W]e have recognized prejudice from delay and mounting attorney's fees.") (unpublished decision, internal quotations omitted).

The delay between the filing of this adversary proceeding and the Trustee's Motion to Extend Time was 567 days. The evidence at the Final Hearing showed that although the Delgados have not been served, their attorney has been active in the bankruptcy case and in seeking dismissal of the claims against the Delgados, which has resulted in an unspecified amount of attorneys' fees. In addition, the considerable length of the delay makes more compelling the Delgados arguments that the adversary proceeding has interfered with their ability to move on with their lives and has adversely affected their reputation in their community. On the other hand, the Delgados have continued to live in their home and to enjoy the results of any fraudulent transfers that may have occurred. Furthermore, there was no evidence presented during the Final Hearing that the Delgados defense has been materially harmed by the delay.

The Court recognizes that the long delay in effectuating service of process, can cause prolonged emotional distress and lead to additional attorneys' fees and costs. However, the Delgados did not show how they have been prejudiced in their ability to defend the action on the merits. Furthermore, the Court can address the adverse effects of the long delay through lesser sanctions than dismissal. On balance, the Court finds that the actual prejudice factor weighs against dismissal.

11

3. *The amount of interference with the judicial process.*

Interference with the judicial process can result from "willful failure to comply with a direct court order." *Ehrenhaus*, 965 F.2d at 921. Furthermore, the Court considers what judicial resources have been expended on the adversary proceeding and the failure to effectuate service of process.

No testimony was given regarding the efforts the Trustee made to find counsel after Askew & Mazel, LLC developed a conflict precluding it from representing the Trustee on claims against the Delgados. Instead of serving the complaint by that date, the Trustee filed an amended complaint on November 1, 2017, although filing an amended complaint does not reset the time to effectuate service. Furthermore, the Court has conducted four status conferences and a final hearing on the issue of service of process. Therefore, not only has the Trustee failed to abide by a Court order but also the Court has wasted judicial resources. This factor weighs in favor of dismissal.

4. *The culpability of the Trustee.*

The complaint was originally filed by the CCC, who initially failed to effectuate service in the forty-three-day period between commencement of the adversary proceeding and conversion to Chapter 7. When the bankruptcy case converted to Chapter 7, the Trustee stepped into the shoes of the CCC and was responsible for timely service of process. The Court issued five different alias summonses all of which were not served on the Delgados. There are sixteen named defendants in the adversary proceeding. Certainly, the number of defendants in this case made service more difficult. While service on other defendants was faulty and eventually occurred, the Trustee has not shown how she tried to comply with Rule 4(m) with respect to the Delgados. There is no evidence that the Delgados were evading service of process. However, the Delgados did fail to appear at the meeting of creditors convened under 11 U.S.C. § 341.

12

The Trustee's only excuse for not serving the complaint prior to her retention of Giddens, Gatton & Jacobus P.C. was that it took her time to find new counsel. No evidence was presented regarding her efforts to find new counsel. In addition, once the Trustee had hired new counsel to represent her in this matter, counsel failed to take any action for over eight months and only acted upon the filing of the Motion to Dismiss. The Trustee, who is an experience attorney, has a duty to supervise her counsel. Because of the inordinate delay and lack of any explanation beyond inadvertent mistake for the Trustee's actions, this factor weighs in favor of dismissal.

5. *Whether the Court warned the Trustee in advance that dismissal of the action was a likely sanction for noncompliance.*

The Court warned the Trustee that dismissal of the action would be a likely sanction for noncompliance with the November 1, 2017 deadline to effectuate service. The Trustee did not appear as counsel of record in the adversary proceeding at that date, however notice of the order was sent to counsel of record for the Trustee. The Trustee, as an attorney licensed to practice law and admitted before the United States Bankruptcy Court for the District of New Mexico, should also be aware of the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure and the consequences of not effectuating service timely and failing to abide by the Court's order. This factor weighs in favor of dismissal.

6. *The efficacy of lesser sanctions.*

Dismissal with prejudice is an extreme sanction. *Ehrenhaus*, 965 F.2d at 920 ("dismissal [with prejudice] represents an extreme sanction appropriate only in cases of willful misconduct."). Where "inadvertence or simple neglect" are the basis for dismissal, the Tenth Circuit has cautioned courts to use lesser sanctions than dismissal as a deterrence. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464–65 (10th Cir. 1988).

13

The claim at issue in this adversary proceeding represents the largest remaining asset of the bankruptcy case. There are substantial creditor claims. Dismissing this adversary proceeding could result in a loss to creditors of the bankruptcy estate who relied on the Trustee to diligently pursue the claims of the estate. The creditors of the bankruptcy estate did not contribute to the Trustee failing to effectuate service. The Trustee has informed the Court that unless she collects further assets, the bankruptcy case will be administratively insolvent. Therefore, the Court is reluctant to dismiss with prejudice.

The Court considers the following lesser sanctions appropriate: (1) granting the Delgados a set off as a claim against the estate for any attorneys' fees, costs, other expenses and compensatory damages relating to the delay in service in the adversary proceeding; (2) under 11 U.S.C. § 330 and 11 U.S.C. § 105(a), limiting the Trustee's commission to reduce or exclude any commission based on disbursements from funds recovered from the Delgados as the Court determines reasonable when the Trustee submits her application for compensation to the Court;[4] and (3) taking into account the delay in service in determining to what extent the attorneys' fees for counsel for the Trustee are reasonable and will be approved. As it is possible to impose a lesser sanction to ameliorate the harm done by the delay, deter future failures to effectuate

---

[4] The trustee's commission is presumed to be reasonable under 11 U.S.C. § 330. However, "Section 330(a)(2) gives the bankruptcy court discretion to award less compensation than the amount sought where extraordinary circumstances exist (but not more)." *In re Morreale*, 595 B.R. 409, 415 (10th Cir. BAP (Colo.) 2019). Extraordinary circumstances have been held to be "things like the trustee not performing his or her duties, performing them negligently, or delegating a substantial portion of those duties to an attorney or other professional." *Mohns, Inc. v. Lanser*, 522 B.R. 594, 597–98 (E.D. Wis.), aff'd sub nom. *In re Wilson*, 796 F.3d 818 (7th Cir. 2015). It appears that the Trustee's actions in prosecuting this case fall into the extraordinary circumstances exception to the presumption that the statutory commission is reasonable. "Accordingly, a trustee's request for compensation may be reduced or denied if the services expended were not in the interests of the estate." *See In re Wolverine Proctor & Schwartz, LLC*, 2012 WL 3930360, at *4 (Bankr. D. Mass. Sept. 10, 2012), aff'd in part sub nom. *In re Wolverine, Proctor & Schwartz, LLC*, 527 B.R. 809 (D. Mass. 2015). When the Trustee submits an application for compensation, after notice and an opportunity for a hearing, the Court will closely examine the application and will "make detailed findings of fact explaining the rational relationship between the amount of the commission and the type and level of services rendered" as well as set forth whether and to what extent the Trustee's commission will be lowered as the result of the sanction. *In re Rowe*, 750 F.3d 392, 399 (4th Cir. 2014).

service timely, and to protect creditors by preserving the asset for the estate, this factor weighs against dismissal.

7. *The nature of the underlying bankruptcy case and the effect of dismissal on third-party creditors*

As previously discussed, Quick Cash, LLC filed its bankruptcy case a little over a year after it was sued in the Class Action. The claims against the estate exceed $6,000,000.00. If the estate's claim against the Delgados is not decided on the merits, the estate will be administratively insolvent. There creditors in this case would have no recourse against the estate and the allegations of wrongful lending practices could go unchecked. In addition, the strong policy consideration of deciding issues on the merits makes it important that the estate not be procedurally barred from potentially recovering the only asset that could result in a meaningful distribution to creditors

c. <u>Applying the Ehrenhaus and other factors the Court exercises its discretion against dismissal of the action.</u>

The handling of this adversary proceeding has resulted in a series of unfortunate events. Although several of the Ehrenhaus factors weigh in favor of dismissal, others do not. Taking into account that: (1) dismissal would be with prejudice because of the running of the statute of limitations; (2) the nature of the claims against the Delgados in this adversary proceeding; (3) the Delgados pre-petition control over the Debtor; (4) the nature of the assets of and claims against the bankruptcy estate; (5) the prejudice to creditors if the claims against the Delgados are dismissed; (6) the lack of prejudice to the Delgados in the preparation of their defense; (7) the strong policy weighing in favor of deciding matters on the merits; (8) and the availability of lesser sanctions, the Court in its discretion has determined that dismissal is not warranted. The Court will therefore decline to dismiss the claims against the Delgados and will, instead, grant the Trustee's Motion to Extend Time.

15

d. The Court will grant an extension of time.

For the forgoing reasons the Court will grant the Trustee an extension of time until seven (7) business days after entry of the order granting the extension to obtain an alias summons from the Court and effectuate service on the Delgados. Under Fed. R. Bankr. P. 7004(b) the Trustee may effectuate service of process on the Delgados using First Class Mail to their address of record. If the Trustee fails to effectuate service within that time and cannot prove that the Trustee was unable to effectuate service with that time despite diligent efforts, the Court will dismiss the claims against the Delgados with prejudice and consider additional appropriate sanctions.

## CONCLUSION

The Court grants the Trustee's Motion to Extend Time. The Court denies the Delgados' Motion to Dismiss. As discussed above, the Court will consider lesser sanctions at an appropriate time.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on the docket: July 31, 2019

Copy to counsel of record via CM/ECF.